UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA LOGAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:15-cv-00246-CDP |
| CHARTER COMMUNICATIONS, LLC, | ) ) ) |
| Defendant. | ) |

**DEFENDANT CHARTER COMMUNICATIONS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

### I.   INTRODUCTION

Plaintiff Samantha Logan ("Logan" or "Plaintiff") brings a four-count First Amended Complaint ("FAC") against Charter Communications, LLC ("Charter"), in which she alleges Charter misclassified her as an exempt employee under the Fair Labor Standards Act ("FLSA") (Count I) and the Missouri Minimum Wage Law ("MMWL") (Count II), and asserts common law claims for *quantum meruit* (Count III) and unjust enrichment (Count IV). As demonstrated below, each of these claims fails on the merits. At her deposition, Plaintiff conclusively testified that her primary duties consisted of making sales and other tasks necessary to her own sales process. As such, Plaintiff is an outside sales person under the FLSA, and is exempt from the overtime requirements of the FLSA and MMWL. Counts I and II must therefore be dismissed. Moreover, Plaintiff testified that she knew she would only be paid on a salary and commission basis during her employment, and that there was never any agreement that she would be paid overtime or on any other basis. Thus, Plaintiff's common law claims also fail, and Counts III

and IV must also be dismissed. Charter is thus entitled to complete summary judgment as to the entire FAC.

## II. FACTS

The material facts set forth in this motion are not in dispute.[1] Logan began her employment with Charter on October 29, 2012. (Charter's Statement of Uncontroverted Material Facts, (hereinafter "Facts") fully incorporated herein, ¶ 1). She was hired as a Direct Sales Representative ("DSR"), and remained in that role until her February 2014 termination. *Id.* When she applied for the DSR position, Logan knew that it was a sales position, and that she would be required to work in the field making door-to-door sales of Charter's internet, phone, and cable services. (Facts, ¶ 2). Logan further understood that: (a) she would be required to work in excess of 40 hours in a given week; (b) she would be paid on a salaried basis plus commission pay; and (c) there would be no adjustment to her pay based on the number of hours she worked. (Facts, ¶ 3).

According to Logan, making sales was the most important part of her job. (Facts, ¶ 8). Logan also knew that Charter management considered selling to be the most important part of her job. (Facts, ¶ 9). To that end, her performance goals as a DSR were entirely focused on sales: customer growth, revenue growth, and churn reduction. (Facts, ¶ 10). Plaintiff admits that achieving these sales goals was "the most important part" of her career at Charter. *Id.* Logan testifies that she spent between "around 40 percent" to "about 50 percent" of her workweek physically soliciting sales from customers. (Facts, ¶ 12). At least twenty hours of her work week were devoted to actually talking to customers selling Charter products. *Id.* In addition,

---

[1] The material facts are fully stated in Defendant's Statement of Uncontroverted Material Facts, filed contemporaneously herewith pursuant to Federal Rule of Civil Procedure 56(c)(1).

Logan spent 70-75% of her workweek in the field, away from the office. (Facts, ¶ 13). Logan would only go into the office at the beginning of her work day, "a couple of times during the week," for the purpose of attending a team meeting, or picking up business cards or other paperwork for prospective customers for the purpose of selling. *Id.* All sales occurred at the customer's home. (Facts, ¶ 19).

In addition to her time spent knocking on doors and soliciting sales in the field, the remaining duties Logan identified were also sales-related. For example, Logan spent thirty minutes to an hour each day entering dispositions. (Facts, ¶ 23). A "disposition" is the DSR's self-report of what happened at each door that the DSR knocked on for the purpose of selling Charter products, and only reflected sales activity. (Facts, ¶ 24-25). Examples of events reported in a disposition are: presentation/no sale, sale, not home, or vacant lot. *Id.* If the customers were not at home during her first visit, Logan used her dispositions to keep a record of whether or not she needed to return to the customers' homes at a later point in time to make a sale. (Facts, ¶ 25).

In order for a sale to be deemed closed and for commission to be earned, the customer needed to sign up for service, <u>and</u> the installation of the service had to be completed. (Facts, ¶ 21). According to Logan, keeping customers happy, even during and after an installation, was important because it would affect her ability to sell to other customers in the same area. (Facts, ¶ 22). As Logan testified at deposition: "It was just important for me and for my customers to be happy because, you know, not, when you're in sales, you're not just selling the product, you're selling yourself." *Id.*

## III.     ARGUMENT

Summary judgment is appropriate if "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party "bears the initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court will not weigh the evidence and decide the truth of the matter, but rather will only determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but instead, by affidavit or other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

### A.     Plaintiff's Claim For Unpaid Overtime Under The FLSA (Count I) Must Be Dismissed Because Plaintiff Was Clearly An Exempt Outside Salesperson.

The Fair Labor Standards Act exempts "any employee employed … in the capacity of an outside salesman" from minimum wage and overtime provisions. 29 U.S.C. § 213(a)(1). The "outside sales" exemption applies to those: (1) "whose primary duty is (i) making sales …, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). Application of the "outside sales" exemption should not depend on "technicalities." *Christopher v. SmithKline Beecham Corp.,* 132 S.Ct. 2156, 2163 (2012). Instead, the outside sales exemption analysis requires a functional and contextual inquiry which does not require a narrow construction. *Id.* at 2170, 2172. The "ultimate determination of whether an employee is

exempt [is] properly characterized as a conclusion of law." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).

As discussed more fully below, Plaintiff's claim for overtime compensation fails as a matter of law because Plaintiff falls squarely within the outside salesperson exemption.[2] Every component of Plaintiff's job was directly related to facilitating her own sales. Even the narrowest reading of the outside sales exemption regulations and relevant case law concludes that Plaintiff's claims should be dismissed as a matter of law.

1. Plaintiff's Primary Duty Was To Make Sales.

There is no question here that Plaintiff's primary duty was to make sales and/or obtain orders for services. "Primary duty" means the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). While the amount of time an employee spends performing exempt work can be a "useful guide", it is "not the sole test." *Id.* at (b).

Here, Plaintiff's position carried all of the indicia of an outside salesperson:

- She was primarily compensated on a commission basis. Of her $69,500 income in 2013, $51,500 was earned as commissions from her own sales. (Facts, ¶ 5).

- She worked alone 95% of the time, and at least 70% of her work hours were spent out in the field. (Facts, ¶¶ 13-14).

---

[2] Plaintiff seeks application of a 3-year statute of limitations on the basis that Charter "willfully" failed to pay overtime and failed to keep accurate time records. (FAC, p. 3, 13). Determination of this issue is unnecessary at this juncture given the admissions of record. However, even this allegation fails as a matter of law. Plaintiff admits: (a) she never complained that she should have been paid overtime; (b) she is unaware of any DSR that was ever classified as non-exempt; (c) she is unaware of any conduct by Charter to manipulate records or block a relevant investigation; and (d) she cannot identify a single circumstance in which Charter was advised to pay DSRs overtime but refused to do so. (Facts 42-45). Under these circumstances, it is improper to apply the 3-year statute of limitations. *Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612, 617 (E.D.Va. 2014)(holding that 2-year statute of limitations applied, noting that while willfulness "is ultimately a question of fact, a plaintiff must present sufficient evidence of willfulness to survive summary judgment"); *Chapman v. BOK Financial Corp.*, No. 12-CV-613, 2014 WL 3700870, at *3 (N.D. Okla. July 25, 2014)(holding 2-year statute of limitations applied absent specific evidence of willfulness).

- Every day, at least 40-50% of Logan's total work hours were devoted to the act of soliciting sales of Charter products from prospective customers. (Facts, ¶¶ 12, 15).
- Plaintiff personally secured commitments from prospective Charter customers to purchase Charter services. (Facts, ¶¶ 18-20)
- Logan unequivocally admitted that the "most important" part of her job at Charter was to make sales:

  Q: What do you think the most important parts of your job were as a Direct Sales Representative?
  A: The most important part, I think, generating revenue for the company.
  Q: By making sales?
  A: Yes.

  (Facts, ¶ 8)

In addition to the actual solicitation of sales, Plaintiff's remaining duties were closely related to her own sales activity. "Work that is 'directly and closely related' to the performance of exempt work is also considered exempt work" and considered when evaluating the employee's primary duties. 29 C.F.R. § 541.703(a). Plaintiff's remaining duties merely emphasize the significance of the sales component of her job. For example, entering dispositions daily merely entailed reporting to the company the sales activities she performed that day. (Facts, ¶ 24). When Plaintiff attended or tracked installations performed by technicians, she did so to ensure her sales closed so that she would earn commissions. (Facts, ¶¶ 27-31). And, when she spent a day per month mapping her territory, she was merely scouting the area where she was planning to solicit sales. (Facts, ¶¶ 38-39).[3]

---

[3] Plaintiff's work related to the detection of stolen cable services does not affect the applicability of the outside sales exemption. Plaintiff admits that the theft detection work was, at most, incidental to the sales activity she already engaged in, and did not detract in any way from her sales. (Facts, ¶¶ 34, 37). In addition, Plaintiff admitted that detection of stolen services presented an additional sales opportunity for her. (Facts, ¶ 37). This activity is, therefore, incidental and in conjunction with Plaintiff's own sales. *Fields*, 261 F. Supp. 2d at 977 (finding auditing

These facts warrant dismissal of Plaintiff's FLSA claim under the plain language of the regulations and established precedent. For example, in *Christopher*, the employees at issue regularly spent 40 hours per week in the field soliciting physicians, and 10-20 hours per week performing other miscellaneous tasks. 132 S. Ct. at 2158-59. Like Logan, they were not required to report their hours, they were minimally supervised, and they were primarily paid based on incentive compensation. *Id.* The Court held that they were exempt under the outside sales exemption. *Id.* In so holding, the Court determined that employees paid handsomely like Logan, and who "spent between 10 and 20 hours outside normal business hours each week performing work related to his assigned portfolio [of products] in his assigned territory – *are hardly the kind of employees that the FLSA was intended to protect.*" *Christopher*, 132 S. Ct. at 2173 (emphasis added).

*Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971 (W.D. Tenn. 2003) is directly on point.[4] Like Logan, Fields worked as a DSR selling cable services door-to-door. *Id.* at 975. Like Logan, Fields went door-to-door to solicit prospective customers identified by a lead sheet. *Id.* at 972. Like Logan, Fields was paid commissions for each sale of services made. *Id.* And, like Logan, Fields sought to bring a class action on behalf of other similarly-situated DSRs. *Id.* The court dismissed Fields's claims on summary judgment, holding that the DSRs were exempt

---

of cable lines "incidental and in conjunction with" the sales of cable services under similar circumstances). Moreover, Logan testified that the amount of time it took to detect stolen services was nominal. Indeed, all she had to do was "look up" at the cable box as she approached the customers' doors. (Facts, ¶ 34).

[4] Although *Fields* pre-dates the 2004 regulatory update, its analysis is equally applicable. As the Supreme Court noted, "the current regulations are nearly identical in substance to the regulations issued in the years immediately following the FLSA's enactment. *Christopher*, 132 S. Ct. at 2162.

from overtime under the outside sales exemption.[5] "These facts establish that Plaintiffs were employed for the purpose of and did regularly and customarily engage in selling services away from the Time Warner office." *Id.* at 975. *See also, Hartman v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 592 (E.D. Va. 2014)(where plaintiff was selling mortgage services, paid on commission tied to her own sales and could dictate her schedule, there was "little doubt" her primary duty was to sell).

Based on these facts and applicable law, it is clear Plaintiff's primary duty was to make sales.

2. Plaintiff Was Customarily And Regularly Engaged Away From Charter's Place Of Business.

Plaintiff also easily satisfies the second element of the "outside salesperson" exemption, which requires that she be "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a)(2). "Customarily and regularly" means "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.

There is no question that Plaintiff's work was customarily and regularly engaged away from Charter's place of business. Plaintiff admits that she was "in the field" 70-75% of the time. (Facts, ¶ 13). And, as described above, the work she performed in the field was at the customers' homes, soliciting and facilitating the sales process. (Facts, ¶ 12-14). In facts, Plaintiff admits she spent 40-50% of her work hours actually soliciting sales at customer homes. (Facts, ¶ 12-15). This, alone, far exceeds the typical quantities required by courts when determining whether

---

[5] Fields's claims were dismissed even though there were other factors weighing against exemption status which are not present in this case. For example, AOL Time Warner's internal job description listed the DSR position as non-exempt. *Id.* at 975. In addition, the AOL Time Warner DSRs testified that they had extensive customer debt collection responsibilities. *Id.* at 973.

the "customarily and regularly" element of the exemption has been met. *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d. 626, 631 (7th Cir. 2010)(holding outside sales exemption applied where plaintiff "spent four to eight hours a day outside the office making in-person sales calls" and "visited the office on only about half of her workdays"); DOL wage Hour Op. Ltr. No. FLSA2006-11 at 3 (outside sales exemption applied where plaintiff spent 20% of his time outside the office selling, and 80% of his time inside the office); *Hantz*, 11 F. Supp. 3d at 620 (holding mortgage salesperson met outside sales exemption despite the "significant work inside the office" the plaintiff performed); *Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012)(holding that sales activity outside the office "one or two hours a day, one or two times a week" satisfies the outside sales exemption); DOL Wage Hour Op. Ltr. No. FLSA2007-2 (same).

Plaintiff's additional work activities merely amplify the extent of her sales activities. For example, Plaintiff's "mapping" practices (which she performed approximately 8 hours per month) was nothing more than scouting and pre-screening her sales territory. (Facts, ¶¶ 38-39). Entering dispositions simply involved recording her personal sales activities. (Facts, ¶ 24). Attending installations or performing follow-ups pertaining to installations ensured that sales closed (so that she could earn her commissions), and that her customers were happy (which facilitated referrals for more sales). (Facts, ¶ 27-31). And, while searching for stolen services was, at best, incidental (as it involved nothing more than looking up at the cable box while she was walking to the customer door), it also facilitated her own sales because it presented another potential customer. (Facts, ¶¶ 32-37). *See Fields*, 261 F. Supp. 2d at 975 (holding that searching for stolen cable services ("auditing") was work that was incidental to sales activities).

Indeed, Plaintiff fails to identify *any* work activities she performed which were unrelated to her own sales activities. Because Logan squarely fits within the outside sales exemption, she is not entitled to overtime compensation as a matter of law and Count I should be dismissed.

### B. Plaintiff's Claim For Unpaid Overtime Under Missouri Law (Count II) Must Be Dismissed Because Plaintiff Was An Exempt Outside Salesperson.

Count II of Logan's FAC must also be dismissed. As discussed above, Logan is an exempt outside salesperson under the FLSA. Because Logan is exempt from overtime pay under the FLSA, she is *also* exempt from overtime pay under the MMWL. Mo. Rev. Stat. § 290.505(3). Section 290.505(3) of the MMWL provides that an employer's obligation to pay overtime "shall not apply to employees who are exempt from federal minimum wage or overtime requirements including, but not limited to, the exemptions or hour calculation formulas specified in 29 U.S.C. Sections 207 and 213, and any regulations promulgated thereunder." *Id.* Logan is exempt under the federal outside sales employee regulations, and thus is also exempt from Missouri's state overtime requirements. *Weng v. Washington Univ.*, 2015 WL 1915125, at *2-5 (Mo. Ct. App. E.D. April 28, 2015)(finding plaintiff exempt from overtime under the MMWL because she was an exempt learned professional under the FLSA). Charter is thus entitled to summary judgment on Count II of Plaintiff's FAC.

### C. Plaintiff's Quantum Meruit And Unjust Enrichment Claims (Counts III And IV) Must Be Dismissed Because Plaintiff Admits She Agreed To Work On A Salary And Commission Basis For All Hours Worked, And Was Paid Accordingly.

Plaintiff's claims for *quantum meruit* and unjust enrichment are equally invalid. Plaintiff admits that she entered the DSR position knowing that her salary and commission pay would constitute her only compensation for all hours worked. In fact, Plaintiff's FAC pleads facts that directly conflict with the elements necessary to establish each claim. Plaintiff cannot now assert


that she is entitled to additional compensation over and above that which she agreed to be paid. As set forth below, Plaintiff's common law claims cannot therefore proceed.

### 1. Plaintiff's Quantum Meruit Claim Fails.

Logan has no legal or factual basis for *quantum meruit*. To establish a claim for *quantum meruit*, Plaintiff must prove: (1) that she provided Charter materials or services at its request, or with its acquiescence, (2) the materials or services had reasonable value, and (3) Charter, despite Plaintiff's demands, refused to pay reasonable value. *County Asphalt Paving, Co., Inc. v. Mosley Const., Inc.*, 239 S.W.3d 704, 710 (Mo. App. E.D. 2007). That said, however, "[q]uantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is based on a promise implied by the law that a person will pay the reasonable value for services or materials provided at that person's request or with his approval." *KC Excavating and Grading, Inc. v. Crane Construction Co.*, 141 S.W.3d 401, 408-09 (Mo. App. W.D. 2004).

Plaintiff's testimony conclusively demonstrates that she cannot satisfy these elements. Logan admits that: (1) she received the same salary each week irrespective of the number of hours she worked; (2) the commission she received depended *not* upon hours worked, but on sales completed; (3) the salary and commission she received was meant to encompass all of the work she performed for Charter; (4) she knew there would not be any adjustment to her pay based on the number of hours she worked; and (5) she knew she would be working in excess of 40 hours in a workweek. (Facts, ¶¶ 3, 5, 21). The parties ***never*** agreed that Plaintiff would receive overtime compensation for hours worked in excess of 40 in a workweek. To the contrary, Plaintiff knowingly entered a position that paid a fixed salary plus commission, performed her sales duties, and received the compensation she contracted to receive from Charter. There has never been a contractual obligation or any other agreement for Charter to pay

Plaintiff overtime pay. *See Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313-14 (S.D. Fla. 2006)(granting summary judgment to employer and dismissing *quantum meruit* claim where salaried employees were never promised they would receive additional compensation for their work duties, because "[b]y accepting their salaries without complaint, and receiving the same compensation regardless of whether they [performed extra duties], Plaintiffs accepted the terms of the implied in fact contract. Years later, Plaintiffs may not, though litigation, unilaterally attempt to alter the terms of the implied in fact contract.").

Not only does Plaintiff's sworn deposition testimony preclude her *quantum meruit* claim, but so do the allegations in her Complaint. Plaintiff pleaded that she was employed pursuant to policies and practices, including a uniform and department-wide compensation policy, that required her to work in excess of forty (40) hours without overtime compensation; that she was paid on a salary and commission basis as an exempt employee; and that Charter notified her that she was not entitled to overtime compensation under the FLSA and Missouri law for time spent performing any work. (FAC, ¶¶ 1, 8, 9, 14). These pleaded facts negate a common and essential element in Count III, namely, that there was a promise or understanding to pay overtime compensation for time spent performing work. It is well-established that a claim fails where the facts set out in the complaint negate an essential element of the claim. *Henke v. ARCO Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1057-58 (E.D. Mo. 2010). Because Plaintiff's pleaded facts invalidate elements of her *quantum meruit* claim, Count III fails and must be dismissed.

Plaintiff cannot contemporaneously claim a right to recover under quasi-contract theories for overtime pay that the parties agreed she was not entitled to receive as an exempt employee. Recovery under *quantum meruit* is limited to the reasonable value of the services performed. *Skillington v. Activant Solutions, Inc.*, 2009 WL 1588280, at *7-8 n.7 (E.D. Mo. June 5, 2009).

Under established Missouri law, if an employer and an employee agree that additional work will be performed without additional compensation, no *quantum meruit* or unjust enrichment claims can lie. *Holland v. Tandem Computers Inc.*, 49 F.3d 1287, 1288-89 (8th Cir. 1995)(*quantum meruit* action fails where parties agreed no commissions would be paid on certain sales); *Bash v. B.C. Constr. Co., Inc.*, 780 S.W.2d 697, 698 (Mo. App. W.D. 1989). Here, Plaintiff's claim is that she worked for Charter with the understanding that she would be paid a fixed salary for all hours worked. Because the price for performing the work, according to the facts alleged in the FAC, was payment on a salary plus commission basis with no overtime compensation, Logan cannot now seek to recover under a *quantum meruit* theory additional monies for performing that same work.

2. Plaintiff's Unjust Enrichment Claim Fails.

Likewise, Plaintiff's attempt to recover under an unjust enrichment theory fails because of Plaintiff's own pleaded facts. To recover for unjust enrichment, Plaintiff must establish: (1) that she provided a benefit to Charter; (2) Charter was enriched by the receipt of the benefit; (3) the enrichment was at the expense of the Plaintiff; and (4) it would be unjust to allow Charter to retain the benefit. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010).

A claim for unjust enrichment cannot lie where Plaintiff received that which was owed pursuant to the terms of a compensation agreement. *Holland*, 49 F.3d at 1289; *International Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo. App. E.D. 1990)(in a construction case, landowners not unjustly enriched where they paid contract price for materials received); *Slusher v. Mid-America Broadcasting, Inc.*, 811 S.W.2d 443, 444-47 (Mo. App. S.D. 1991)(an employee was not entitled to recover commissions on revenues received by employer after discharge where employee had been paid contract price under unambiguous terms of compensation contract). In

the instant case, Plaintiff alleges that she and the other DSR employees were paid to perform work on a salary basis with the understanding that they would not receive overtime compensation. Based upon her own pleadings, other than her salary and commission pay, Plaintiff, as well as the other DSR employees, was not entitled to further payment. Thus, no unjust enrichment could have occurred and Count IV should be dismissed.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Charter Communications, LLC respectfully moves that this Court dismiss Counts I through IV WITH PREJUDICE, and for all other relief this Court deems just and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By /s/ R. Nelson Williams
 Laura M. Jordan, #48755MO
 R. Nelson Williams, #63322MO
 One US Bank Plaza
 St. Louis, Missouri  63101
 314-552-6469
 FAX 314-552-7469
 ljordan@thompsoncoburn.com
 rwilliams@thompsoncoburn.com

Attorneys for Defendant
Charter Communications, LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via the Court's electronic filing service this 3rd day of June 2015 on the following:

| | | |
|---|---|---|
| Bret C. Kleefuss | and | Gregory Anderson |
| Law Offices of Derald L. Gab | | Anderson Henderson, LLC |
| 1708 Olive Street | | 1420 Strassner Drive |
| St. Louis, MO 63103 | | St. Louis, MO 63144 |

/s/ R. Nelson Williams